**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARILIN CINTRON<br>542 Chestnut Street<br>Pottstown, PA 19464<br><br>Plaintiff,<br>v.<br><br>CALIBER SERVICE MANAGEMENT LLC<br>397 Eagleview Boulevard, Ste. 202<br>Exton, PA 19341<br>and<br>LEO SERVICE MANAGEMENT, INC<br>10 N. High Street<br>West Chester, PA 19380<br><br>Defendants. | CIVIL ACTION<br><br>No.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, Marilin Cintron (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Caliber Service Management LLC and Leo Service Management, Inc. (hereinafter referred to as "Defendants") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200(d) et. seq), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq*) and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff was unlawfully terminated by Defendant, and she suffered damages more fully described/sought herein.

[1] Plaintiff identifies these claims herein for notice purposes only. Plaintiff is required to properly exhaust her administrative remedies before proceeding upon these claims in court. Thus, Plaintiff will move to amend once these claims are properly exhausted.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where it they subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving right-to-sue letters from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. Leo Service Management, Inc. ("LSM") is a national facilities management network, incorporated in the state of Delaware but headquartered in Exton, PA. LSM provides interior and exterior services, such as routine upkeep, repairs, winter service, grounds care and stormwater and drainage support.

9. Caliber Service Management, LLC ("CSM") is the portfolio company and the exterior services platform of Defendant LSM. Defendant CSM is incorporated in the state of Delaware, but headquartered in Exton, PA.

10. Defendant LSM acquired Defendant CSM by in or about early 2026, but retained its operational hub and continuing to use Defendant CSM's name were desired internally and externally for continuity of operations.

11. Both Defendant entities are headquartered at the same address and functioned in all respects as the same enterprise as Plaintiff's single, joint and/or integrated employers.

12. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff commenced employment with Defendants on or about November 17, 2025 (after accepting an (initial) offer letter from Defendant CSM).

15. The position was initially seasonal with the prospect of Plaintiff being given full-time work (presumably dependent upon her performance).

16. Plaintiff was assigned to work at the location of Defendant CSM in Exton, Pennsylvania.

17. Plaintiff was then provided with agreements, handbook procedures, and other forms to execute as one of Defendant LSM's employees.

18. Medical accommodation forms were processed (as will be discussed later) through Defendant CSM, but Plaintiff was managed and paid through Defendant LSM.

19. Despite being paid by Defendant LSM, Plaintiff was held out publicly in all emails as being a Coordinator for "Caliber Service Management."

20. Documentation provided to Plaintiff during her period of employment clearly illustrated such entities functioned as the same business and employer of Plaintiff, but they just may outwardly represent differences to customers or clientele.

21. When presented with a proposed "Severance Agreement and Release" (contemporaneous to her termination from employment discussed below), Plaintiff's employers were identified as Defendants LSM and CSM (among other related entities) therein.

22. Upon hire with Defendants, Plaintiff's job title in her November 10, 2025 offer letter stated Plaintiff would work as a "Snow Coordinator on the Account Management team."

23. Plaintiff then received an updated offer letter dated January 9, 2026 identifying she would be employed as an "Account Coordinator" ***as full-time (indefinite and non-seasonal)*** employee effective January 12, 2026, under the umbrella of Defendant LSM.

24. The January 9, 2026 revised offer stated Plaintiff's manager would continue to be Ricky Southcott ("Southcott" – Account Director).

25. Plaintiff was also managed by Madison Dise ("Dise" – Senior Account Manager).

26. Southcott and Dise managed Plaintiff until on or about March 4, 2026.

27. From on or about March 4, 2026, Plaintiff was transitioned under the management (and team) of Nicole Popowicz ("Popowicz" – Account Manager) and Danielle Caudill ("Caudille").

28. From a human resources standpoint, Plaintiff was required to interact with Moira Phillips ("Phillips" – Director / VP of HR) until early April of 2026.

29. Toward the tail end of Plaintiff's employment, her primary human resources contact would have been Natoisha Kelly ("Kelly" – VP of HR).

30. Kelly had been hired by Defendants (in the spring of 2026) shortly before Plaintiff's termination from employment.

31. Plaintiff is a Hispanic female with disabilities. In particular, she suffers from Hidradenitis Suppurativa ("HS"), a chronic autoinflammatory disease and a life-long disability.

32. When Plaintiff's condition flares up, she is almost entirely immobile and is substantially limited in her ability to walk (among other limitations).[2]

33. During early 2026, Plaintiff was initiating medical accommodation requests and racial discrimination concerns to Defendants' management.

34. As to Plaintiff's health - - by February 22, 2026, she had submitted a "Reasonable Accommodation Request Form" (shortly after asking about the "reasonable accommodation" process on February 12, 2026, via email).

35. Plaintiff's medical doctor provider noted patient "has a chronic condition which goes through periods of remission and flares," and patient "will need to work from home 1-2days/month."

[2] HS causes nodules to build under the skin's surface, and when the follicle ruptures – it triggers a painful inflammation.

36. Plaintiff's medical accommodation request was extremely reasonable, only that she was seeking permission "to work remotely on days when I am experiencing a medical flare-up."

37. Plaintiff expected a quick response and to be granted the accommodation within roughly a week at the latest.

38. This was because Plaintiff had periodically worked from home on many occasions (as she could perform her role 100% remotely).

39. For example, there were times when Plaintiff would work from home in the past for a week at a time, and others performing the same or similar role to Plaintiff worked from home, (as did her own management).

40. Since Plaintiff's request was premised upon her health, she assumed and hoped for a prompt response.

41. Phillips was really non-responsive to her accommodation requests.

42. Plaintiff was having to work in pain and struggling to be mobile on certain days waiting for Phillips to get back to Plaintiff.

43. When Plaintiff emailed about being in pain and asking to work from home on a particular day, Phillips didn't respond (even though Plaintiff saw her in the office in close proximity).

44. Plaintiff had to escalate concerns that the company was not medical accommodating Plaintiff to her management, and Plaintiff's manager checked with Phillips who had – from what Plaintiff had been told – not even started any review of my accommodation request.

45. Phillips apparently just directed that Plaintiff work with her manager who was then informally permitting Plaintiff to work from home during flareups after several delays and after Plaintiff feeling forced to proverbially stick it out in the office in pain.

46. As a mere example on March 17, 2026, Plaintiff informed her manager: "I'm struggling with this pain and the walking unfortunately. I think I'm towards the end because the pain is increasing. That usually means its close to rupturing." Plaintiff's manager simply lamented she was sorry Plaintiff had to go through that.

47. On or about March 18, 2026, Plaintiff followed up directly on her ADA request and was told it was essentially going through the process.

48. Again on March 27, 2026, Plaintiff relayed to her manager she was actually feeling depressed because of her "massive pain," and was suffering from "back to back flares." Plaintiff's manager again lamented she understood Plaintiff was in pain.

49. Phillips dropped the ball, didn't accommodate Plaintiff, and Defendants had no oversight to ensure a meaningful accommodation process.

50. After Plaintiff kept following up, she was finally told her accommodation request was approved on or about April 8, 2026; this was months after Plaintiff had sought a very easy and modest accommodation.

51. Separately, Plaintiff had raised some concerns to Defendants' management and human resources expressing that Dise should undergo some type of sensitivity or non-discrimination training because she was racially offensive.

52. Dise had been making offensive comments about storms being named after Hispanic people, suggesting because Plaintiff had ethnic hair, she needed to go to a hair stylist who can handle Plaintiff's ethnic hair properly, and Dice engaged in what Plaintiff overtly

perceived to bullying and other uncomfortable exchanges on account of Plaintiff's Hispanic ethnicity.

53. In relation to the comment about storms being named after Hispanic people, Dise had said "I wonder why that is." This conversation was on a group teams meeting in front of a manager, and got to the point where another colleague (Jeffrey moss) had to tell them to stop because it was "starting to sound racist."

54. Plaintiff told such management and human resources she was personally offended and viewed Dice's actions as discriminatory.

55. Within just a few days of Plaintiff being reassigned to work under Popowicz (in early March of 2026), she had learned that Popowicz' accounts were unattended, she had previously been placed on a corrective action plan, and she was being subjected to another corrective action plan.

56. Plaintiff, however, performed her job excellently. But within just a few days of Plaintiff being assigned to work under Popowicz, she was informed she was being placed under a corrective action plan as well.

57. When Plaintiff complained about this, she was told it is automatic that she be included in a corrective action plan when the person she was supporting is placed on one.

58. This of course seemed absurd, as Plaintiff had been an exemplary employee and yet to even start working for this person for more than a few days.

59. Nonetheless, Plaintiff had expressed concerns that she felt this was punitive and inappropriate.

60. As of on or about April 6, 2026, Plaintiff had talked with Kelly, explained many of her concerns related to mismanagement of her accommodations and mistreatment as aforestated by Dice.

61. Plaintiff also shared with her additional information via email on April 6, 2026 (inclusive of attachments), including for example: "the teams meeting that took place with the Truist team on February 22nd regarding the racial comments made about Hispanic names."

62. Plaintiff was informed there was some sort of "investigation" pending, but she was very disturbed by prior delays, non-responsiveness, a lack of accountability, and Plaintiff being put in a disciplinary situation that could possibility be attributed to her (though she had not been the subject of any performance counselings).

63. On or about May 8, 2026, Plaintiff was informed she was being terminated due to business restructuring.

64. On May 8, 2026, Geneva Mednez-Anselmo ("Anselmo" – Sr. HR Manager) emailed Plaintiff using the phrase as per Plaintiff's "resignation," various separation information was being provided.

65. Plaintiff immediately expressed objection, stating she had not resigned.

66. Anselmo then stated she erred, and confirmed Plaintiff's "separation was employer-initiated."

67. Plaintiff was then provided with a proposed (unsolicited) severance agreement to sign on the condition that she waive all legal claims (including discrimination and retaliation).[3]

[3] Defendant's offer of a severance or release agreement when not required is well-established admissible evidence of discrimination, retaliation, and pretext nationwide. *See e.g. Staffieri v. Northwestern Human Servs.,* 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc*., 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc*., 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and

68. Plaintiff was abruptly included in a (purported) restructuring in close proximity to raising racial concerns, expressing medical accommodation needs, and then complaining that neither of these matters were being handled or investigated properly or timely.

69. Plaintiff thus believes her inclusion in such a restructuring was a complete pretext, as she had been strongly encouraged to accept a full-time offer of indefinite employment in January of 2026 (knowing she was not accepting alternative employment to remain with Defendants in a non-seasonal capacity) while praising her for her performance.

**COUNT I**
**Violations of 42 U.S.C. Section 1981**
**([1] Race Discrimination; [2] Retaliation)**

70. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

71. During Plaintiff's employment with Defendant, she was subjected to discriminatory comments on account of her race.[4]

72. Instead of investigating Plaintiff's aforesaid complaints of and/or objections to race discrimination, Defendant's management ignored them and left her legitimate concerns unresolved.

---

considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc*., 2012 WL 5268365, at *2 (N.D. Ind. 2012)(holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

[4] "Hispanics clearly constitute an ethnic group" and "that Hispanics comprise a distinct race for purposes of § 1981." *Vill. of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016). The Ninth Circuit agrees. *Pavon v. Swift Transp. Co. Inc.*, 192 F.3d 902, 908 (9th Cir. 1999) (holding that discrimination based on being Hispanic was actionable under Section 1981)." Nike USA, Inc. v. Passari, No. 25-cv-3996-ABA, 2026 LX 469595, at *9 (D. Md. Aug. 12, 2026); *and see* "[C]ourts have treated Hispanic as a race for purposes of § 1981 because Hispanic people are often perceived as non-white." Mojica v. Advance Auto Parts, Inc., No. 15-1418, 2016 U.S. Dist. LEXIS 2890, at *10-11 (E.D. Pa. Jan. 11, 2016).

73. Plaintiff was ultimately terminated on or about May 8, 2026, for completely pretextual reasons.

74. Plaintiff believes and therefore avers that she was subjected to discrimination and retaliation as a result of her race and/or her objections to/complaints of race discrimination.

75. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

**COUNT II**
**Violations of Title VII**
**([1] Race Discrimination; [2] Retaliation)**

76. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

77. During Plaintiff's employment with Defendant, she was subjected to repeated discriminatory comments because of her race and/or national origin.

78. Instead of investigating Plaintiff's aforesaid complaints of/objections to race discrimination, Defendants' management ignored them pursued a termination guised as a restructuring.

79. Plaintiff was ultimately terminated on or about May 8, 2026, for completely pretextual reasons.

80. These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

**COUNT III**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**(1] Actual/Perceived/Record of Disability Discrimination; [2] Failure to Accommodate; and [3] Retaliation)**

81. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

82. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities, including walking and standing.

83. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants, however, Plaintiff did require reasonable medical accommodations at times (including remote work).

84. Plaintiff kept Defendants informed of her serious medical conditions and need for accommodations.

85. Defendant failed to properly accommodate Plaintiff by delaying consideration of her accommodation requests and thus forcing Plaintiff to remain in office, working in pain.

86. Plaintiff lodged internal complaints related to Defendants' failure to adhere to the ADA, which including recently and shortly before her abrupt termination.

87. Plaintiff believes and therefore avers that she was subjected to discrimination and retaliation because of (1) her actual/perceived/record of health conditions; (2) her requests for reasonable accommodations (set forth *supra*); and (3) Defendants' failure to properly accommodate Plaintiff (set forth *supra*).

88. Plaintiff believes and therefore also avers that her disabilities were motivating and/or determinative factors in Defendants' termination of her employment.

89. Defendants' actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (021842003)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: August 28, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Marilin Cintron | : | CIVIL ACTION |
| v. | : | |
| Caliber Service Management LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 8/28/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:____________________ Judge:______________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):______________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*______________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CINTRON, MARILIN | CALIBER SERVICE MANAGEMENT LLC, ET AL. |
| (b) County of Residence of First Listed Plaintiff: Montgomery *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant: Chester *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| (c) Attorneys *(Firm Name, Address, and Telephone Number)*<br>Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☒ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
ADA (42USC12101); Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the ADA, Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 8/28/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______